**Tagged Opinion**

ORDERED in the Southern District of Florida on Oct 20, 2008



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

DALIMIL JANATA

    Debtor.
_____/

Case No. 06-11562-BKC-JKO

Chapter 7

## ORDER GRANTING MOTION FOR FEE ENHANCEMENT

**THIS MATTER** came before the Court on Moffa & Bonacquisti, P.A.'s (the "Applicant") Motion for Authorization of Fee Enhancement (the "Motion"). For the reasons set forth below, the Motion is granted and the Applicant is awarded $30,000 as a fee enhancement.

### FACTS

**1. Procedural History**

On April 26, 2006, Dalimil Janata filed a voluntary petition for bankruptcy relief under Chapter 7. *See* [DE 1]. On July 27, 2006, this court granted the Trustee's application to employ John Moffa,

Esq., ("Moffa") as legal counsel. *See* [DE 30]. On December 5, 2007, this court ordered a disbursement of interim fees in the amount of $90, 296.00, and costs of $3,151.78 to the Applicant. *See* [DE 349]. On April 9, 2008, Applicant filed an Application for Final Compensation, requesting $48,621.50 in previous fees held back by this court, $1,955 in new fees, and $40.77 in expenses, for a total of $50,617.27. *See* [DE 363]. Two days later, on April 11, 2008, the Applicant filed the Motion, seeking $99,240.00 in fee enhancement. *See* [DE 364]. On May 27, 2008, the Applicant filed a Notice of Reduction of Requested Fee Enhancement, reducing its request to $66,160 as a result of negotiations with the City of Hollywood, Florida, the estate's largest general unsecured creditor. *See* [DE 373]. On June 30, 2008, the United States Trustee filed his Objection to Motion for Authorization of Fee Enhancement and Memorandum of Law in Support of Objection (the "Objection"). *See* [DE 391].

### 2. Facts of the Case

This has proven a highly bizarre case, with a bankruptcy estate far more convoluted than the ordinary chapter 7 case it initially appeared to be. Moffa first encountered this case in reviewing pertinent schedules on June 16, 2008, and attended a Meeting of Creditors some ten days later on June 26, 2008. By his own description, what ensued thereafter was a dizzying forensic foray into the tangled affairs of the Debtor. A tangentially-related chapter 11 bankruptcy as well as panoply of State Court actions proved interwoven to the primary matter at hand, and "[T]he Debtor, through various aliases, pseudonyms, fictional and non-fictional characters, attempted to thwart the efforts of the Trustee and Moffa." [DE 364, ¶6].

In the ensuing months, such obstructive efforts would take on a veritably carnival-esque aura, with failed acts of sleight of hand being perpetrated through the propagation of fictitious trusts, the

creation of fictitious parties, the intentional clouding of real estate titles, and the engagement in what can only be characterized as legally frivolous actions in this court.

Throughout this case, the Debtor was brazenly uncooperative with the Trustee and Moffa, refusing to turn over books, records, and property which was clearly not exempt. In October 2006, the Debtor purported to dismiss this case by the filing of a Notice of Dismissal [DE 76], a remedy which is unavailable to a chapter 7 debtor. The Debtor thereafter became even more uncooperative, ultimately taking the absurd position that because he had "dismissed" the case, it was a legal fiction – and he thereafter peopled it with fictitious parties. After he simply refused to appear for an examination as to his assets pursuant to Bankruptcy Rule 2004, and refused to appear in court despite repeated orders that he do so, I held the Debtor in contempt. He thereafter "went to ground"[1] and pleadings from him, signed by his fictitious alter ego "LeOniD oMeGA" were submitted to the Clerk's office from false addresses in New York City and the Czech Republic.

Moffa's legal diligence strategically thwarted many such obtrusive endeavors. As a result of Moffa's efforts to realize on assets owned by the Debtor but held in false names and fraudulent trusts, the Bankruptcy Estate ultimately realized sufficient funds to pay all general unsecured creditors, as well as a residue capable of satisfying in part the claims of various subordinated creditors. The results obtained here were remarkable in light of the once-compelling appearance of this matter as a very small asset chapter 7 case. I note the contention by the United States Trustee that there was nothing

---

[1] The Debtor was ultimately held in contempt and the United States Marshal was directed to bring him before the court [DE 219]. The contempt order was ultimately modified [DE 361] to delete the apprehension provisions after the Trustee concluded that sufficient funds had been obtained from which general unsecured creditors could be paid in full so that the estate could be closed.

remarkable about Moffa's performance but, based upon my thorough knowledge of this case, I conclude otherwise.

## DISCUSSION

### 1. Legal standard for fee enhancement

While the awarding of legal fees commensurate with an approved hourly rate multiplied by the number of hours worked in a given matter is the norm in the administration of bankruptcy cases, deviation from the lodestar so calculated is quite rare. "The Supreme Court has consistently held that bonuses and fee enhancements should only be awarded in exceptional cases where the results are exceptional and not adequately compensated by the applicant's hourly rate." *In re Flowers*, 178 B.R. 553, 558 (Bankr. S.D. Fla. 1995). However, as Judge Jennemann observes:

> [F]ee enhancements are allowed and should be encouraged where the attorney's initiative, perseverance, and skill lead to an extraordinary success quickly, efficiently, and effectively. In considering fee enhancements in a bankruptcy case, courts should examine the way the attorney worked to maximize the value of the assets in the case and to increase distribution to all classes of creditors. An attorney's ability to overcome unique and unforseen obstacles also is relevant. Other important factors to consider include whether the results far exceeded the initial expectations and whether the party paying the fee consents to the additional payment.

*In re Gencor Industries*, 286 B.R. 170, 179-180 (Bankr. M.D. Fla. 2002). Indeed, as the United States Court of Appeals for the Eleventh Circuit has observed, "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Norman v. Housing Auth. Of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1998).

### 2. Veracity of the Applicant's Request

Applying Judge Jennemann's approach, I conclude that a fee enhancement is proper here. Moffa showed laudable initiative in the early stages of this case, rejecting the simplistic and more

probable view of the matter as being unworthy of administration. Perseverance was thereafter exhibited in the near-constant undertaking of efforts to de-mystify the Debtor's latest obstructive action. Speed, efficiency and effectiveness are, respectively, well evidenced by the prompt and thorough administration of this case in a manner that has yielded a generous creditor payout. Moffa demonstrated the requisite creativity in working with various secured creditors and a municipality to achieve efficient ends, maximizing value accordingly. Numerous obstacles were encountered – the Debtor's infatuation with sleight of hand being not least amongst them – and initial expectations were wildly exceeded. Accordingly, I will award the Applicant a fee enhancement. Taking all of the relevant factors governing fee enhancements into account, I conclude that the appropriate enhancement is $30,000.

For the reasons stated above, it is hereby **ORDERED**

1. Applicant's Motion for Authorization of Fee Enhancement [DE 363] is **GRANTED** and a fee enhancement in the amount of $30,000 is awarded.

2. The Trustee is hereby authorized and directed to pay that amount to Moffa & Bonaquisti, P.A. forthwith.

###

Copies to:

Dalimil Janata
1947B Taft St
Hollywood, FL 33020

John A Moffa, Esq
7771 W Oakland Park Blvd #141
Sunrise, FL 33351

Office of the United States Trustee